## CARY v. GAYNOR.

### (Supreme Court, Appellate Term.   June 6, 1907.)

SALES—ACTION FOR PURCHASE PRICE—SUFFICIENCY OF EVIDENCE.

  In an action to recover the purchase price of books, evidence *held* to sustain a judgment for defendant.

  [Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 1056–1059.]

Appeal from Municipal Court, Borough of Manhattan, Sixth District.

Action by Arthur Cary against Joseph Gaynor, otherwise known as Joseph Gonorovsky. Judgment for defendant, and plaintiff appeals. Affirmed.

Argued before GILDERSLEEVE, P. J., and FITZGERALD and GOFF, JJ.

Stephens & Baker, for appellant.

Rowland B. Mahany, for respondent.

PER CURIAM. The contract upon which this action is founded was originally made by defendant under the name of Joseph Gonorovsky, but previous to the commencement of said action this defendant had his name changed to Joseph Gaynor, which is the explanation for the designation under which he is here sued. Said defendant contracted to buy a set of books, called "The Ridpath Library of Universal Literature," from plaintiff, who agreed that the said books should be in accordance with the sample shown to defendant by plaintiff's agent, as to type, paper, binding, and general execution. The price was to be $39.60, to be paid in monthly installments of $3, and the title was to remain in plaintiff until full payment, although the books were to be delivered to defendant at once. A set was so delivered to defendant, which was not in accordance with the sample, and defendant objected to accepting the same. Thereupon plaintiff delivered another set of said books, which were in accordance with the sample, and defendant subsequently paid therefor. The first set of books have never been returned to plaintiff, although the return has been repeatedly demanded, according to plaintiff's evidence. The plaintiff brought this action for $39.60, the alleged value of said first set of books and the agreed price for a set of the same that should be according to the sample shown to defendant, as aforesaid. The parties appear to have had some negotiation, and plaintiff accepted $30 in full, as its agent claims, for the second set, allowing a discount on the original price, which was $39.60, in consideration of the defendant's paying up in a lump sum the balance due, instead of paying in monthly installments of $3. The defendant claims that the $30 were given and accepted in full settlement for both sets of the said books, although he admits that the original price of a single set, made according to sample, was $39.60. The only detail in which the first set did not correspond with the sample was that they were not gilded in the same manner. The justice found for the defendant. Plaintiff appeals.

In support of his defense of a settlement and payment, defendant produces a letter from plaintiff's agent, Frank C. Baker, as follows:

"I have seen Arthur L. Cary in regard to your proposition to settle the whole amount you owe, and he is willing to discount the bill 10 per cent., if you will send me a check by return mail. The amount you still owe is $24.60, so your check should be for $22.14 to settle on this basis. If I receive it by Thursday morning, I will send you a receipt in full."

This letter is dated on February 1, 1905. On or about March 17, 1905, defendant gave his check for $22.14 to plaintiff's said agent, and on the same day received from him the following receipt:

"Received of Joseph Gaynor thirty dollars, in full of the purchase price of Ridpath's Library of Universal Literature."

It appears that, when he received this receipt, defendant paid, in addition to the check for $22.14, a sum in cash of $7.86, making up thus the said sum of $30. When asked to explain this receipt in full, plaintiff's said agent, the said Frank C. Baker, swears as follows:

"I was settling only for one set of books. I did not know at the time that the other set had not been returned. I supposed it had been. Later they said to me they had not received the first set, and wished me to recover it. Then I learned that he had not returned the set. * * * This settlement was not for both sets of books. It was for the second set, which had been already delivered. That is all I knew at the time. I supposed the first set had been returned. I knew that the second set (given in exchange for the first set) were in the possession of defendant at the time I wrote the letter [of February 1st]."

With regard to this last-mentioned letter of February 1, 1905, plaintiff's agent says:

"I offered to settle for the second set of books the balance that was due by him at a 10 per cent. discount, if he paid within a certain time."

Plaintiff's said agent repeatedly states that neither the letter of February 1st, nor the check of March 17th, nor the receipt in full of March 17th, had any bearing upon the first set of books, but related wholly and exclusively to the second set, which had been delivered to defendant previous to said letter of February 1st, in exchange for the first set, and that said agent, when he wrote the said letter and gave said receipt, supposed that the first set had been returned to plaintiff by defendant. This agent of the plaintiff swears that, upon learning of the nonreturn of the first set, he made several demands on defendant for the same, and that, after repeatedly promising to return them, defendant finally told plaintiff's said agent that he could not return them, because they had been burned. Plaintiff's witness Edward Taylor, a clerk in the employ of plaintiff, swears that he also made demand on defendant for the return of the first set of books in September, 1905, and that defendant replied that he had them in his possession and would not return them, because he claimed "he had paid for them in full at the time he had settled for the second set, and that the payment made at that time was for both sets, and that he had a receipt in full for both sets."

Another witness for plaintiff, Isaac F. Ferris, an employé of plaintiff, swears that the only objection made by defendant to the first set was that the books were not set with gilt all the way around, and that

he, on behalf of plaintiff, had the second set made that way and delivered it to the defendant. He also sufficiently qualifies as an expert in values, and swears that the reasonable value of the first set, which was not returned, was $39.60. He also states that the two sets were identical, except so far as the said gilt binding all the way around the second set of books was concerned. The only witness for the defendant was the defendant himself, who admits that the agreed price for one set of the books was $39.60, but says that the first set delivered was not according to sample; that after considerable negotiation plaintiff agreed to take back the first set and deliver a new set to defendant; that plaintiff did deliver the new set, and promised to send a truck to take away the first set, which defendant was willing to return, but that plaintiff did not so send for the first set; that he told said Frank C. Baker, plaintiff's agent, that if he could get a discount he would "pay up the whole thing." Defendant admits that the first set of books are still in his possession, and he says he is willing to return them, if plaintiff will pay back the difference between $22.14 and $30, which latter sum he claims he paid in full for both sets.

It appears, as we have seen, from Baker's letter of February 1, 1905, that on that date defendant owed on the second set of books a balance of $24.60, having, apparently, paid by installments the difference between that sum and the contract price of $39.60, and that said Baker, on said date, agreed to take $22.14 in full payment of the said balance due of $24.60, if paid "by return mail," or at latest on the following Thursday. Defendant, however, did not pay within the time limit indicated in said letter; but, on March 17, 1905, more than a month after the expiration of the time limit, the defendant paid his check for $22.14 and gave $7.86 in cash, making $30, instead of the $24.60, which was the balance due on the second set on February 1, 1905, upon which payment he obtained the receipt in full above quoted. Thus plaintiff apparently got $5.40 more than was due for the second set of books, even without the allowance of any discount. The documentary evidence, therefore, seems to sustain defendant's theory that he got a discount on the second set, reducing the balance due from $24.60 to $22.14, and also obtained the first set for $7.86 in cash, although the undisputed testimony is that its value, when defendant first got it, was $39.60, the same as the second set. Whatever reasons may have actuated Baker in making such a liberal reduction, it cannot be said, under the testimony presented, that the judgment is not sustained by sufficient evidence.

The judgment should be affirmed, with costs.